The opinion of the Court, was delivered by
Nevius, J.
The important, indeed the only material question we are called upon to decide, arises upon the second plea.
By an act of the Legislature passed the 4th of February, 1830, the defendants became an incorporated company, with power to make a canal of certain dimensions, from the waters of the Delaware river, to the waters of the Raritan. They were also authorized, after fixing their route and causing a survey thereof to be made and deposited in the office of the Secretary of State, to enter upon lands and take possession, subject to such compensation as by said act was directed. The thirteenth section, provides that when the company cannot agree with the owner of such required lands, for the use or purchase thereof, *251 and the damages sustained by such owner, that a particular description of the land so required, shall be given in writing, under the oath of an engineer to one of the Justices of the Supreme court, who shall, after proper notice, appoint three commissioners to examine and appraise the lands. And it is further made the duty of the commissioners, after taking an oath impartially to examine the matter in question and make a true report, to examine said land and make a just and equitable estimate of the value of the same and assessment of damages and report what sum shall be paid by the company for the land and damages. By the fourteenth section, it is provided, that if either party shall be dissatisfied with the report, he or they shall apply to the Supreme Court at the next term, who shall, upon good cause shown, set the same aside and direct a proper issue for the trial of said controversy and order a jury struck and a view to be had of the premises and the issue to be tried at the next Circuit court. And it is made the duty of the jury to assess the value of the land and the damages sustained. In this case commissioners were appointed pursuant to the act, who made a report, with which the plaintiff was dissatisfied, and upon his application an issue was directed, which -was tried by a jury, at the Burlington Circuit, at the term of November, 1835, and a verdict rendered for the plaintiff for the value of the land taken and damages.
Upon the trial of the present case the defendants under their second plea gave in evidence the proceedings had at the Burlington Circuit upon the issue directed by this court between the same parties, and contended that the damages claimed here had already been awarded by the former jury as they were, or ought by law to have been embraced in that issue.
The plaintiff in answer insists, First, That the injuries here complained of could not lawfully or by fair construction of the act have been included in that suit, and secondly, that in point of fact they were not so included, but by the express direction of the court, the jury were instructed that they could not assess damages for the injury arising from washing away the plaintiff’s soil, or for the deterioration of his grass and crops occasioned by leakage from the canal. In support of this answer, the plaintiff produced one or more of the jurors on the former trial, who testified, that for the injuries complained of in this suit, the jury *252 assessed and awarded him no damages, and that the same were not takén into consideration in forming their verdict. He also produced the original charge given to the jury upon that occasion by Justice Ryerson who tried the cause, wherein the learned judge used this language: “ By damages I believe the Legislature meant something more than the value of the land. Damages necessarily occasioned by the construction of the canal or necessarily resulting from its existence to the land itself, as such, may be lawfully taken into your consideration. You are not to consider injuries which have not yet been done, but which you may suppose will hereafter arise; as flooding from waste weir, or deteriorating grass, or in making a new or enlarging an old gully. These are injuries which must be compensated when they are done. The incidental damage done the land holder while the canal is building, such as washing out the gully, cannot be taken into view, but a permanent injury which can be foreseen and for which a present price can be fixed, may be taken into vie'w, such as privation of a highway, or rendering access to it more difficult or expensive.”
From this brief extract of the charge of the learned Judge, taken in connection with the evidence; I take it to be clear that the jury did not in point of fact on that issue assess damages for the injury to the plaintiff’s grass and crops by means of the leakage from the canal, or for the injury arising from the reflow of the waters of the Delaware and Crosswicks creek, to wit, the washing away the soil. Whether they awarded damages for the destruction of the plaintiff’s road or not, does not clearly appear, nor is it very material to knowi
Upon the trial of this case, which was had before me, I expressed no opinion as to the correctness of the charge given by my learned predecessor, but reserved to the defendant the right to raise that question here, as I deemed it an important one if they should see fit to do so. I therefore instructed the jury, that they were to inquire into all damages of which the plaintiff complained, which were not the subject of inquiry before the former jury, or which by the direction of the Judge were withheld from their consideration.
The questions presented for our consideration are, First, Whether the plaintiff was entitled by law to have his damage assess *253 ed by the former jury for the injury to his crops and land, from leakage of the canal, for the loss of his road and the carrying away his soil by the reflow of the waters occasioned by the canal embankment.
Secondly, If he was entitled by law to have his damages so assessed, whether if he omitted to claim or prove such damages before that jury, or was prevented from doing so by the court, he can maintain another and distinct action for their recovery ?
To determine the first of these questions, we are to inquire into the true construction of the act, and what the legislature meant by the phrase, “damages sustained by the owner.” They certainly did not mean damages done to the land actually taken and occupied or to be taken and occupied by the company, for the owner is to receive the price or value of such lands and the company are to take and hold them. And notwithstanding the legislature use the word sustained,. in the past tense, it is equally clear, from an examination of the whole act, that they did not intend to limit the assessment to such damages as the owner has sustained at the time of the assessment, for the act does not contemplate that any damages have accrued to him at the time it contemplates the assessment to be made, for the company have no right to the possession of the land, or to construct their canal upon it, or in any wise to affect the owner’s interest or property ’till the same has been valued and the damages assessed ; and consequently the law will not presume, that the company have committed any damages or the owner sustained any. The act clearly intends such prospective damages as may arise from the construction and use of the canal. It may be asked then, if the legislature did not mean to limit the term damages to the land actually taken by the company, or to damages already sustained by the owner, what damages did they mean. This question can only be answered in general terms, for it would be impossible to enumerate every species of injury to which the owner of land might be subjected by the construction of a canal across it. These must depend upon the peculiar circumstances and situation of the land taken, and its relative position to other lands, property or rights of the owner. I concur in that part of the charge above recited, where the judge says, that the damages intended are such as are necessarily occasioned by the construe *254 tion of the canal, or necessarily result from its existence, and use, to the property or rights of the owner, whose lands are taken, But in construing the act, I would not limit them as the learned judge did in a subsequent part of his charge, to such only as would be distinctly foreseen and for which a present price could be fixed. I believe that the legislature intended all damages accruing to the owner of lands from any and every physical effect produced by the construction and use of the canal; whether the same were clearly to be seen and easily estimated before the construction of the canal, or whether they were uncertain and doubtful results from such construction. I believe that the legislature intended that the commissioners should assess all damages sustained by the owner, or likely to be sustained by him from the construction and use of the canal, whether they arise from the alteration °or destruction of a public or private way, the exclusion or the overflowing of waters, the alteration or change in the current of streams or in no, the destruction of crops, the deterioration of adjacent lands by leakage, or whatever other damages may result from the natural and physical effects produced by the canal, provided always that the canal shall be constructed according to the provisions of the act and with proper care and skill. I believe that the legislature intended that the award of the commissioners, or in case that should be set aside, the verdict of the jury followed by the judgment of the court, should be final and conclusive between the parties, both as to the value of the land and the damages sustained. A.nd I do not believe that they ever designed that after such proceedings the company should be subjected, from time to time, during the whole period of its existence, to an action at law by every landholder on the line of the canal, to recover damages for some injury which he may allege was not foreseen and for which consequently he was not compensated. Such a construction would have been a most effectual bar to the enterprise of erecting a canal; for no man would have embarked his capital in a work, the cost of which could never be ascertained ’till the charter expired. It may be said that it operates injuriously to an owner who sustains damages from a cause which neither the commissioners nor jury, by the utmost human sagacity, could foresee, or provide against, but the defendants might urge the same objection that they were *255 liable to be assessed for anticipated injuries, which may never occur.
Entertaining this view of the question, I respectfully differ from the learned judge, who delivered the above charge; and am of opinion that the plaintiff was legally entitled to an assessment, by the commissioners and former jury, for all the injuries which are the subject of complaint in this action.
This brings me to the second question, whether having omitted to do so, or having been prevented by the court from doing so, he can now maintain this action. Believing that the statute provided a remedy for the injuries complained of in this action, I consider the plaintiff as confined to that mode of relief and debarred from an action at common law. It is no answer to say, that he was deprived of his remedy under the statute, by the act of the court, if the court committed an error, the plaintiff should have sought to have it corrected by a motion for a new trial.
I deem it unnecessary to advert to more of the evidence than I have already done, except to remark, that there was no evidence that the canal was constructed carelessly or with any want of due and ordinary skill.
I think the rule in this case should be made absolute.

Rule made absolute.

Justices Whitehead and Elmeb did not hear the argument and gave no opinion.
Cited in Del. & Rar. Can. Co. v. Lee, 2 Zab. 248; State v. Brown, 3 Dutch. 34; Veghte v. Hoagland, 5 Dutch. 130; Hoagland v. Veghte, 1 Vr. 518; Col. Del. Bridge Co. v. Geisse et al., 6 Vr. 475; Trenton Water Power Co. v. Chambers, 2 Beas. 200.